IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MELISSA DIRETTO,                  )
                                  )
      Plaintiff,                  )
                                  )
            v.                    )      1:16cv1037(JCC/IDD)
                                  )
COUNTRY INN & SUITES BY           )
CARLSON, et al.,                  )
                                  )
      Defendants.                 )

**M E M O R A N D U M   O P I N I O N**

      This matter is now before the Court on Plaintiff
Melissa Diretto's ("Plaintiff") Ex Parte Motion for Immediate
Hearing ("Plaintiff's Motion for a TRO") [Dkt. 2] seeking a
Temporary Restraining Order ("TRO") enjoining Defendant Country
Inn & Suites and Defendant Sun Group Management, LLC ("Sun
Group")(collectively, "Defendants") from altering the state of
their water systems.  For the following reasons, the Court
requests clarification on the basis for its jurisdiction, upon
receipt of which, it will deny Plaintiff's Motion for a TRO.

**I. Background**

      The following facts are taken from Plaintiff's
Complaint [Dkt. 1], Plaintiff's Memorandum of Points and
Authorities ("Plaintiff's Memorandum in Support") [Dkt. 3], and
the Declaration of Christopher M. Day ("Plaintiff's

1

Declaration") [Dkt. 4].

At all times during the events identified below and continuing until Decedent Peter Neely's ("Decedent") death on July 10, 2016, Plaintiff was Decedent's wife.  (Compl., ¶ 7.) Decedent was diagnosed with Acute Lymphocytic Leukemia in 2014 and underwent a stem cell transplant treatment in July of 2015. (*Id.* at ¶ 13.)  From June 22-24, 2016, Decedent, along with two of his minor children stayed at the Country Inn & Suites by Carlson hotel located at 656 Warrenton Road, Fredericksburg, Virginia 22406 ("Fredericksburg Country Inn & Suites") as paying guests.  (*Id.* at ¶14.)  During this time, the Fredericksburg Country Inn & Suites furnished guests with showers, faucets, a pool, a whirlpool tub or spa ("hot tub"), and other water systems, the water of which was intended for use and consumption by the guests generally.  (*Id.* at ¶ 15.)  During his stay at the hotel, Decedent availed himself of the use of the water systems in the hotel, including use of the hot tub on or about June 23, 2016.  (*Id.* at ¶ 16.)  The water in the hot tub was heated, causing it to steam or vaporize, thus allowing it to be inhaled and ingested by decedent.  (*Id.* at ¶ 17.)

On July 3, 2016, Decedent began to experience symptoms consistent with Legionnaires' disease.  (*Id.* at ¶ 20.)  On July 6, 2016, Decedent was admitted to the Hospital of the University of Pennsylvania.  (*Id.* at ¶ 21.)  A bronchoalveolar test on July

11, 2016 demonstrated that Decedent had contracted Legionnaires'
disease.  (*Id.*)  On July 10, 2016, Decedent died as a result of
Legionnaires' disease.  (*Id.* at ¶ 22.)  Plaintiff alleges that
Decedent contracted his Legionnaires' disease from the
negligently maintained hot tub at the Fredericksburg Country Inn
& Suites.  (*Id.* at ¶ 23.)

On July 20, 2016 and July 25, 2016, Environmental
Health Specialist Jennifer Davies of the Virginia Department of
Health inspected the pool and hot tub at the Fredericksburg
Country Inn & Suites.  (*Id.* at ¶ 18; Pl.'s Decl., Ex. A, at 5-
9.)  During both of these inspections, the chlorine levels of
the pool and the hot tub were found to be well below the
Virginia Department of Health's minimum requirements.  (Compl.,
¶ 19; Pl.'s Decl., Ex. A, at 5-9.)  On July 25, 2016, the
Stafford County Environmental Health Department ("SCEHD") issued
a "Notice of Alleged Violation" informing Peter Sun of Sun Group
that SCEHD had determined the conditions observed by Jennifer
Davies "may constitute threats to public health and the
environment" and directing Mr. Sun to take steps to remedy the
situation at the Fredericksburg Country Inn & Suites.  (Pl.'s
Decl., Ex. A, at 11.)

On August 12, 2016, Plaintiff filed this action
against Defendants alleging, generally, causes of action for
wrongful death by negligence and breach of contract.  (Compl.,

3

¶¶ 25-72.)  Simultaneously, Plaintiff filed their Motion for a TRO along with Plaintiff's Memorandum in Support and Plaintiff's Declaration.  Plaintiff seeks a TRO preventing the potential destruction of evidence by enjoining Defendants from taking any action to alter the condition of their water systems.  Plaintiff has refrained from serving Defendants with the Complaint or attempting to contact Defendants regarding the TRO out of a concern that informing Defendants of the existence of this lawsuit may cause them to destroy evidence.  Oral argument on Plaintiff's Motion for TRO took place on August 18, 2016, and the Motion is now ripe for decision.

## II. Legal Standard

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part*,

4

607 F.3d 355 (4th Cir. 2010).  The plaintiff bears the burden of establishing that the court should grant a preliminary injunction or a temporary restraining order.  *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997)(quoting *Hughes Network Systems, Inc. v. InterDigital Comm. Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)).

### III. Analysis

A. <u>Jurisdiction</u>

Federal district courts are courts of limited jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)(citing *Bowles v. Russel*, 551 U.S. 205, 211–12 (2007)).  "Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment."  *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *accord McCulloch v. Velez*, 364F.3d 1, 5 (1st Cir. 2004)("It is blackletter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction.").

Plaintiff contends that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which confers original jurisdiction over cases where diversity of citizenship exists between the parties and the amount in controversy exceeds

$75,000.00.  When invoking the jurisdiction of the federal district courts pursuant to § 1332(a), "[t]he burden to show the jurisdictional fact of diversity of citizenship [is] on the . . . plaintiff." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007)(alteration and omission in original)(quoting *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966)); *accord Piney Run Pres. Ass'n v. County Comm'rs of Carroll County*, 523 F.3d 453, 459 (4th Cir. 2008).  Plaintiff has failed to allege facts which demonstrate diversity of citizenship.

Plaintiff's Complaint identifies Defendant Sun Group Management, LLC, ("Sun Group") as a "limited liability corporation organized under the laws of the State of Virginia."[1] The Fourth Circuit has clarified that when determining the citizenship of a limited liability company, the court must recognize that "[a] limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise." *Gen.*

---

[1]    The phrase "limited liability corporation" is something of a misnomer, as Virginia does not recognize any such entity.  An "LLC" under Virginia law is in fact a "limited liability company."  This confusion is common, and understandable, with even courts occasionally falling into this trap. *See, e.g. Geographic Network Affiliates-Intern., Inc. v. Enter. for Empowerment Found. at Norfolk State Univ.*, No. CH05-263, 2005 WL 1514432 (Va. Cir. Ct. June 27, 2005)(alternatively using "limited liability corporation" and "limited liability company" to refer to the same entity, "Rise One LLC").

*Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)(citing *GMAC Commercial Credit LLC*, 357 F.3d 827, 829 (8th Cir. 2004)).  Thus, a limited liability company "is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members."  *Id.* Plaintiff's Complaint alleges that Sun Group has its "principal place[] of business in Virginia," but Plaintiff fails to identify any of Sun Group's members or their citizenship. (Compl., ¶ 2.)  Plaintiff has therefore not met her burden of demonstrating that complete diversity of citizenship exists. Accordingly, the Court must dismiss this action unless Plaintiff files an amendment to their Complaint alleging facts sufficient to establish that this Court has jurisdiction.  *See Brennan v. Carolina Coach & Camper, LLC*, No. 5:15-cv-00103, 2015 WL 6550770, *3 (W.D.N.C. October 28, 2015).

    Although the Court cannot rule on Plaintiff's Motion for a Temporary Restraining Order until its jurisdiction is clear, that Motion has been fully briefed by Plaintiff and the Court will address the merits of the Motion below in the interest of judicial economy.  *See Settlers Crossing, L.L.C. v. U.S. Home Corp.*, 383 F. App'x 286, 288 (4th Cir. 2010)(affirming district court's finding of lack of subject matter jurisdiction and alternative dismissal on the merits).

    B.  <u>Temporary Restraining Order</u>

### 1. Likelihood of Success on the Merits

Although a plaintiff seeking a TRO need not show a certainty of success, the plaintiff must make a "clear showing" that they are likely to succeed with their claims at trial. *The Real Truth About Obama*, 575 F.3d at 345. Plaintiff's Memorandum in Support fundamentally misunderstands this requirement. Plaintiff focuses on the "likelihood of finding *Legionella* at the property." (Pl.'s Mem. in Sup. at 6.) At no point does Plaintiff address the likelihood that they will succeed in their underlying action for breach of contract and wrongful death. Accordingly, the Court cannot find that Plaintiff has made a "clear showing" that they are likely to succeed with their claims at trial.

### 2. Irreparable Harm

The plaintiff must "make a clear showing that it is likely to be irreparably harmed absent preliminary relief." *Real Truth About Obama*, 575 F.3d at 347. "[G]enerally irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). Irreparable harm must be "neither remote nor speculative, but actual and imminent."

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted).

In the instant action, Plaintiff contends that without a TRO enjoining Plaintiff from altering the conditions of their water systems, Plaintiffs will suffer immediate and irreparable harm via the destruction of evidence critical to proving their case at trial.  First, Plaintiff has failed to show that a Temporary Restraining Order is necessary here, as Defendants are already under a duty to preserve material evidence during not only the course of litigation, but also during the "period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)(citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  The TRO and the preliminary injunction are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).  Because Defendants are already under an obligation to preserve material evidence, the unjustified breach of which can be readily remedied with sanctions, a TRO is unnecessary in this case to avoid irreparable harm to Plaintiff.

Several circuits have recognized that an ex parte TRO may be appropriate to preserve evidence in rare circumstances,

but merely "[s]howing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding ex parte" with a TRO. *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1993). The Plaintiff must also show that "the adverse party is likely to take the opportunity for such deceptive conduct," through evidence indicating the defendant's past willingness to disregard court orders or conceal evidence. *Id.* Plaintiff has not demonstrated that Defendants are likely to improperly conceal evidence in this case.

Accordingly, Plaintiff has failed to show that absent a TRO, they will suffer *irreparable* harm through destruction of evidence.

### 3. Balance of Equities

On the information presently before this Court, the balance of equities tips in favor of Defendants. Defendants have been directed by SCEHD to "immediately take steps to mitigate the potential public health and environmental threats indicated," including the low chlorination levels in the hot tub and spa. (Pl.'s Decl., Ex. A, at 11.) That notice from SCEHD goes on to inform Defendants that "failure to institute the requirements above may affect further investigation and potential enforcement by the Commissioner and [the Virginia Department of Health]." (*Id.*) If this Court issues a TRO

10

enjoining Defendants from altering the conditions of their water systems, it will be impossible for Defendants to comply with SCEHD's directives, and may expose SCEHD to further enforcement action by the Virginia Department of Health.  Additionally, a TRO preventing Defendants from altering the condition of their water systems would risk exposing Defendants' employees, guests, and curious passersby to the potentially hazardous water therein.  Absent a TRO, Plaintiff may be unable to find a smoking gun proving the existence of Legionella bacteria in the hot tub now, but they will still have the ample circumstantial evidence identified in their Complaint and their Memorandum in Support that "[b]y far the most plausible source for the *Legionella* that afflicted Peter Neely and led to his death is defendants' whirlpool tub." (Pl.'s Mem. in Sup. at 6-7.)  If no TRO is issued, Plaintiff may lose a valuable, but not invaluable piece of evidence, whereas if a TRO is issued, Defendant will be unable to comply with an order from SCEHD, suffer continued exposure to state disciplinary action, and suffer the continued existence of a dangerous but attractive nuisance on their property.  Accordingly, the Court finds that the balance of equities weighs in Defendants' favor and against granting the TRO.

### 4. Public Interest

11

The public interest weighs strongly against issuing a TRO here.  Plaintiff argues that "any attempt at remediation of the *Legionella* situation in the whirlpool tub in response to this suit would endanger public health." (Pl.'s Mem. in Sup. at 8.)  The Court finds that on the contrary, the issuance of a TRO preventing remediation of any Legionella situation would endanger public health.  SCEHD has already declared that the condition of the "swimming pool and spa waters constitute real or potential threats to the health and safety of you [sic] patrons as well as the public at large." (Pl.'s Decl., Ex. A at 11.)  There is no way in which a TRO forbidding the remediation of a public health risk would further public health.  The issuance of such a TRO would only serve to endanger public health.  The public interest is clearly in remedying dangerous or unhealthy situations and preventing the further spread of disease.

In addition to the public health concerns, public policy concerns also weigh against issuance of the TRO sought by Plaintiff.  SCEHD has already directed Defendants to "immediately take steps to mitigate the potential public health and environmental threats indicated," including the low chlorination levels in the hot tub and spa. (Pl.'s Decl. [Dkt. 4], Ex. A at 11.)  As a guiding principle, federal courts should "exercise their discretionary power with proper regard for the

12

rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).  By seeking a TRO which would directly conflict with the direction of SCEHD, Plaintiff would bring this Court into conflict with SCEHD and potentially the Virginia Department of Health.  The general principles of federalism and comity counsel against issuing such an order.  *See Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999)("Principles of federalism and comity require no less" than "respect [for] the efforts of state government to ensure uniform treatment of essentially local problems."); *Fralin and Waldron, Inc. v. City of Martinsville*, 493 F.2d 481, 483 (4th Cir. 1974)(Courts should "avoid needless friction in federal-state relations over the administration of purely state affairs.").

Accordingly, the Court finds that the public interest weighs strongly against the issuance of the TRO sought by Plaintiff.  Plaintiff has failed to establish any of the four prerequisites to issuance of a TRO, and has further failed to justify the necessity of proceeding ex parte rather than notifying Defendants.  Accordingly, the Court will deny Plaintiff's Motion for a TRO once jurisdiction is clarified.

## IV. Conclusion

For the foregoing reasons, the Court will dismiss Plaintiff's Complaint if not amended to clarify jurisdiction within 10 days and deny Plaintiff's Motion for a TRO once jurisdiction has been established. An appropriate Order shall issue.

/s/
_____
August 18, 2016                          James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE